# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL BARNES,

    Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS,
ROBERT SHANNON and ERNEST
MACON,

    Defendants.

CIVIL ACTION NO. 3:08-CV-1771

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants' Motion for Reconsideration of this Court's Memorandum and Order of April 5, 2010. For the reasons discussed more fully below, this motion will be granted.

## BACKGROUND

This Court wrote a lengthy factual background in its April 5, 2010 opinion. As such, the Court will only recount those factual issues that are pertinent to the instant motion.

Plaintiff Michael Barnes, a Caucasian male, began working for Defendant Pennsylvania Department of Corrections ("the D.O.C.") in 1986. On February 3, 2007, Barnes was working in the Restricted Housing Unit ("RHU") at SCI-Frackville. (Barnes Dep. 27:2-6.) On that day a shakedown was planned for the RHU.[1] (Barnes Dep. 27:7-13.) During the shakedown, Sergeant James Stotler and Corrections Officers Robert Santangelo and John Davison attempted to remove inmate Aasim Nash from his cell. (Barnes Dep. 34:7-9.)

---

[1] A shakedown is a routine procedure on the RHU, wherein corrections officers search inmates' cells for contraband. (Barnes Dep. 18:16-19:1.)

As the officers removed Nash from his cell, he became verbally abusive toward them. (Barnes Dep. 33:16-21.) After the cell search was completed, Sergeant Stotler attempted to remove Nash from the shower room; as Stotler unlocked and opened the gate to the shower room, Nash kicked it closed, striking Stotler in the hand. (Stotler Dep. 49:3-8, April 30, 2009.) Nash then leaned against the door to keep it closed, causing Stotler to push the door open so that he could secure Nash. (Stotler Dep. 52:22-53:1.)

Stotler says that Nash fell forward toward the wall when he pushed the door open. (Stotler Dep. 55:6-9). Some corrections officers and Nash claim that Nash fell backward against the wall, and Nash claims that he hit the back of his head after falling. (Davison Dep. 44:6-12, May 1, 2009; Doc. 31, Exs. M, N; Doc. 32, Ex. FF.) Everyone, including Nash, states that Nash spit in Stotler's face when Stotler came into the shower room to retrieve Nash. (Doc. 32, Ex. FF.) Nash claims that Stotler then punched him in the eye; this story was corroborated by another inmate who witnessed the incident. (Doc. 32, Ex. FF; Doc. 16, Ex. 4.) All the corrections officers claim that Stotler did not punch Nash or that they did not see what happened and that the injury to Nash's eye was not noticed by any of them until Captain Barnes spoke with Nash after being returned to his cell. (Stotler Dep. 61:2-19; Barnes Dep. 43:25-45:2.)

Nash suffered a fractured medial wall of his left orbit and had bruised the back of his left eye. (Doc. 16, Ex. 12.) The doctors believed that Nash's injury was consistent with being punched in the face or eye. (Doc. 16, Exs. 12, 13.) One doctor, while emphasizing that he was not a forensic expert, opined that if Nash had hit a cement wall he likely would have exhibited more facial trauma on his forehead, cheek and chin. (Doc. 16, Ex. 12.)

On February 5, 2007 the Director of the Office of Professional Responsibility ("OPR"),

Michael Wolanin, authorized an investigation into the incident following a request from SCI Frackville Superintendent, Defendant Robert Shannon. (Doc. 32, Ex. II.) The investigation concluded that Barnes had violated D.O.C. policy by failing to take four sets of photographs of Nash's injury, failing to initiate a plan of action after Nash forcibly kicked the gate at Stotler, and not waiting for Nash to calm down and then videotaping his removal from the shower. (Doc. 32, Ex. II.)

On March 6, 2007, OPR Director Wolanin issued an executive summary of the OPR investigation. (Doc. 16, Ex. 2.) The summary concluded that all of the officers had slightly different stories and that their stories were "not realistic or believable." (Doc. 33, Ex. PPP.) As such, a pre-disciplinary conference ("PDC") was recommended for Stotler and Barnes. (Doc. 33, Ex. PPP.)

On April 3, 2007, the PDC committee affirmed the charges against Barnes. (Doc. 32, Ex. RR.) After reviewing the documentation surrounding the incident with Nash, D.O.C. Director of Human Resources Timothy Musser directed Defendant Shannon to dismiss Plaintiff Barnes; Mr. Musser is also a Caucasian male. (Doc. 33, UUU; Doc. 16, ¶ 151.) Knowing that he was going to be terminated, Plaintiff Barnes elected to retire instead so that he would not lose his retirement benefits. (Barnes Dep. 63:2-7; Doc. 33, Ex. VVV.)

On January 15, 2010, Defendants filed a Motion for Summary Judgment. (Doc. 15.) This Court granted summary judgment on all counts except for a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983 against Defendants Shannon and Macon. On April 12, 2010, Defendants filed the instant Motion for Reconsideration arguing that this Court had committed clear error in holding that Plaintiff's speech during the OPR investigation and

3

subsequent PDC was protected by the First Amendment. This motion is now ripe for disposition.

## **LEGAL STANDARD**

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within ten days of entry. FED. R. CIV. P. 59(e). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp.2d 588, 606 (M.D. Pa. 2002). "[R]econsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, Civ. A. No. 05-1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly, the reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp.2d 502, 504 (M.D. Pa. 1999).

**DISCUSSION**

In order to plead a First Amendment retaliation claim, "a plaintiff must allege: 1) constitutionally protected conduct, 2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and 3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006). There are two inquiries that guide the interpretation of whether public employee speech is constitutionally protected. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The first asks whether the employee spoke 1) as a citizen and 2) on a matter of public concern. *Id.* The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Thus, when a public employee is not speaking as a citizen, he does not satisfy the first prong of the test, and it will not matter whether his speech is about a matter of public concern.

In this case, the only possible protected speech for which Barnes was subject to retaliation are the answers he gave during the OPR investigation and the subsequent PDC. Recently, this Court held that an employee speaking in the context of an internal D.O.C. investigation is not engaging in protected speech. *Kerstetter v. Pennsylvania Dept. of Corrections*, No. 4:08-cv-1984, 2010 WL 936457, at *7 (M.D. Pa. Mar. 12, 2010). Barnes' statements were made in an internal D.O.C. investigation pursuant to his official duties as a corrections officer, not as a citizen, and, therefore, are not protected by the First Amendment. As such, summary judgment should have been granted in favor of Defendants

5

on this claim. Therefore, the Motion for Reconsideration will be granted.

## **CONCLUSION**

For the reasons stated above, the Court will grant Defendants' Motion for Reconsideration will be granted.

| | |
|---|---|
| May 21, 2010 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL BARNES, | CIVIL ACTION NO. 3:08-CV-1771 |
| Plaintiff | |
| v. | (JUDGE CAPUTO) |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, ROBERT SHANNON and ERNEST MACON, | |
| Defendants. | |

## ORDER

**NOW**, this  21st  day of May, 2010, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for Reconsideration (Doc. 42) is **GRANTED**.

(2) **JUDGMENT IS ENTERED** in favor of Defendants.

(3) The Clerk of Court shall mark this case as **CLOSED**.


                                                   /s/ A. Richard Caputo  
                                                 A. Richard Caputo  
                                                 United States District Judge